We'll start with United States v. Maxwell 2158. Mr. Marcus. Thank you and may it please the court I'd like to request one minute for rebuttal if I may. Of course. Thank you. Freedom is a precious thing and the ability to defend that freedom when it's on the line is the most precious thing. Unfortunately Ghislaine Maxwell hasn't had that opportunity and the district court erred by ordering pretrial detention for Ghislaine Maxwell, a 59 year old woman with no criminal history who was accused in a case that involves decades-old allegations that were only brought after Jeffrey Epstein died in the government's custody. But Ghislaine Maxwell is not Jeffrey Epstein and for the past 10 months she has been detained in horrific conditions that make it impossible for her to prepare for trial even though as the government agrees she's not a danger to the community and even though the government has not provided any evidence in support of its proffer not even the names of the accusers and the judge has simply assumed that the strength of the evidence is strong based on the allegations in the indictment. So what are you suggesting then that there needs to be a mini trial? No of course not Judge Sullivan there need not be a mini trial but as this court has stated in its previous cases there does need to be more than simply a conclusory proffer. That's not enough as this court's cases in LaFontaine and Martyr make clear and we have less than a conclusory proffer in this case the government simply said the indictment and that's the problem with the government's reliance here there is no real meaningful proffer that's been provided. Second she can't meaningfully prepare for trial because of the condition she's under for example she's kept up at night every 15 minutes with lights shine in her eyes so that they can check her breathing. She's not suicidal there's no evidence she's suicidal why is the Bureau of Prisons doing this? They're doing it because Jeffrey Epstein died on their watch and again she's not Jeffrey Epstein this isn't right she's kept in solitary confinement for no reason and this is no way to prepare for a trial with 2.7 million pages of discovery. The guards follow her around with a handheld camera wherever she goes even when she meets with counsel there's a handheld camera on her so that's why counsel's unable to meet with her in person forgetting putting aside that you're between plexiglass at a small card table without the ability to really review things there's a camera on counsel and just last week another district judge in the Southern District of New York granted a compassionate release motion to Sharon Hatcher due to the extreme lockdown conditions at MDC. This is for an inmate that's not under the conditions that Ghislaine Maxwell is under and for an inmate that is convicted and does not need to prepare for trial. Ghislaine Maxwell is presumed innocent and the court has the ability to order her temporary release under 3142 I so that she can prepare for trial and that's what we're asking for here we just want a fair opportunity a fair chance so that she can get ready for the trial of her life the government has said that it wants to put her in jail for the rest of her life and yet she can't even meet with counsel she's stuck trying to prepare for trial over a video screen like this imagine trying to do that it's really not right especially when they've proffered no evidence as to the strength of the case they've said for example they have a diary but those seven pages of one diary don't even mention Ghislaine Maxwell it shows exculpatory evidence not inculpatory evidence my my five minutes sure went quickly so you did reserve a minute for rebuttal I gave you the five minutes so we'll hear from the thank you thank you thank you may it please the court my name is Laura Pomerantz and I'm an assistant United States attorney for the Southern District of New York I represent the United States on appeal and I also represent the United States and the proceedings below defense counsel has tried to make a number of points I'd like to start by framing what is and is not before the panel the defendant has sought bail on three occasions and in three detailed decisions rendered after lengthy and thorough oral argument and multiple rounds of briefing the district court found that detention was appropriate judge Nathan did not commit clear error in finding three times that the government established by a preponderance of the evidence that the defendant is a risk of flight and that no bail conditions could reasonably assure her appearance in court what is in front of this panel is whether judge findings were clearly erroneous I'd like to interject a question if I may one of the central aspects of the defendants position is that she's subjected to very difficult conditions including shining a light in her eyes every every 15 minutes or I don't know how often at night because she's viewed as a suicide risk what is the basis for viewing her as a suicide risk and has that been evaluated by a by a neutral by a neutral medical psyche psychiatric consultant thank you your honor my understanding is that the the accommodations that have been made for miss Maxwell are based on BOPs assessment of the defendant and her security and the security of the institution miss Maxwell is my understanding is that defense is not suggesting that she be housed in the general population they in fact appear to agree that the best way to ensure her safety is away from the general population and and so while that is a BOP determination you haven't addressed you haven't I don't know whether you're to my question but you're talking about something different now your honor my understanding is that this is it's a BOP assessment of the conditions of confinement and what accommodation should be made for her and hopefully that answers your question oh is she a suicide risk or not is that has the BOP concluded she's a suicide risk or is it some other reason why they're shining lights all all night long your honor the in terms of the weather that the shining of the lights that the BOP my understanding is that is done to ensure that inmates are breathing to ensure the safety and security of the inmate my understanding your honors is that is is a routine is routine by BOP officials routine to shine lights into the eyes of every prisoner every 15 minutes during the night I are you really telling us that your honors I can't speak to what is done as to all in as to all inmates but what I can say is that we we have have not been told that that she is a suicide risk but I would say your honors that judge Nathan is on top of the conditions of confinement she has been supervising all of these BOP procedures and to the extent that there are concerns by raised by the defendant she is able to raise those issues with judge Nathan and judge Nathan has taken as judge Nathan has anything been done along the lines of engaging at the defendant's expense a an independent non BOP psychiatrist to evaluate whether she is a suicide risk your honor my understanding is that is that is not been been done but as I've mentioned the Defense Council has had multiple opportunities and has taken those opportunities to write to the court about the conditions of confinement and and has done there any reason why it shouldn't be done is there any reason why why at her expense there shouldn't be engaged an independent psychiatrist of the courts choosing to evaluate whether she's a suicide risk and if the court if if there's if she's not then things like shining a flashlight in her eyes every 15 minutes during the night perhaps would not be done at the court's your honor the defendant has not asked judge Nathan to to do this and so what I would say is that this is these are what I'm asking you is there any reason why it shouldn't be done is what I'm asking you your honor that has not yet been discussed by the parties in terms of why it shouldn't be done I I appreciate the that in terms of whether this is something that should be done I would I would want to give it some additional thought but your honor defense counsel has not requested that and and so I I understand the court's questions but the MDC is taking this step one of the main complaints one of the main complaints in the defendant's briefing is that she is being improperly treated as a suicide risk in a manner that that makes her life hell and makes it doesn't allow her to sleep and makes it very difficult for her to prepare and they say there's no reason for it except for the fact that Jeffrey Epstein committed suicide and the Bureau of Prison doesn't want to risk another embarrassment to itself which is understandable in the part of the Bureau of Prison but is perhaps unnecessary your honor defense's defense counsel has made multiple arguments and brought the issues that that they have brought before this court before judge Nathan and judge Nathan has has found that she she believes that it was I believe in her December 2020 opinion that she does not believe that the conditions of confinement are uniquely onerous as to this defendant she has been intimately aware of the of the circumstances under which the defendant has been detained and she has been making an assessment of the defendants conditions of the defendants bail situation based solely on miss Maxwell's conditions of miss Maxwell not based on co-conspirators but based on miss Maxwell based on the weight of the evidence against miss Maxwell against the nature of the offenses and the history and characteristics of this particular defendant and so she is aware of these circumstances under which the defendant has been confined she has been actively managing those circumstances and the the access defense counsel the defense has to discovery and to her attorneys and she has helped ensure that the defendant has extraordinary access to her counsel and to discovery and so I do think it's important to know for this court that she has had more time than any other inmate at the MDC to review her discovery she has 13 hours a day seven days a week that's 91 hours a week to review discovery and during that time she has access to email with her counsel calls with defense counsel legal visit access she also has access to video conference for five hours a day on every weekday so that's 25 hours a week and so the idea that she doesn't have enough access is belied by the facts the record seems to indicate that she wears an eye mask at night and so there so lights not being shined directly into her eyes she's got like what do you one of those things you wear on an airplane when you're trying to right your honor my understanding is that the light is not being shined directly into her eyes the light is being shined this into the ceiling so that the MC the MDC guards are able to assess if she in fact to assure did to check on her security to check to check on safety and that she uses some sort of makeshift mask to cover her eyes and so the government understands that that to the extent that the accommodations are insufficient defense counsel has been instructed by the court to confer with the government and ask for relief as needed which defense counsel has done defense counsel on one instance asked for access to a laptop laptop which was provided the government and asked for that access seven days seven days a week instead of the five days a week that she was receiving it and the judge Nathan ordered that access and so the government understands that it has to help ensure that she is meaningfully able to assist her counsel in preparing her defense it's not the case that that she has to be able to review every single piece of evidence but she has to be able to meaningfully assist her counsel and there's no he is allowed and she is allowed an eye mask that goes around that secures around her head light from her eyes she is allowed that for sleeping I don't my understanding is that that's not what she has but that she that she uses some sort of material to cover her eyes it's her own makeshift I wear or I'm asked so right that's my understanding thank you we'll hear from mr. Marcus I'll give you a little bit more time mr. Marcus thank you your honor may it please the court the government used the word routine to say how miss Maxwell's being treated in MDC there is absolutely nothing routine about it she's being treated differently than any other inmate ever in that institution the idea that she has an eye is wrong she tries to use either a sock or a towel to block out the light on her own it's not wrapped around her head and you can imagine trying to keep that on your eyes at night so that the guards don't wake you every 15 minutes to say that and I know that the government never answered the question about whether BOP has said she's suicidal the reason is BOP has never said that BOP has never come out and said that Elaine Maxwell suicidal because she's not they do this for the reason that judge Lavalle said which is they don't want an embarrassment like they had with Jeffrey Epstein but that's not a reason to treat someone in inhumane conditions so that they can't prepare for trial there should be a is it correct that she is allowed to prepare approximately 91 hours a week no your honor that is that that is incorrect and even if she did get a lot of access to a computer over the video screen and we don't dispute that she has a gutted computer where she can review documents with her lawyers over a screen but that's impossible to prepare for trial number one when you're getting no sleep and number two when you're trying to prepare for a decades-old case where you can't search the documents you can't print the documents you can't write on the documents and may I ask you a question about that because I'm interested based on some other things I've done in the last year so there are any number of inmates seems to me who may be in the same situation I understand your your argument based on the lack of the amount of time that's elapsed but you know there any number of inmates who face charges that require intensive document review is there anything unique about her yeah so those inmates around the country that have you know maybe a million documents to review yes there's a number of items that are unique and I'm glad you asked the question number one of course she's trying to do this during a pandemic so she can't meet with her lawyers in a room and spread out the documents she's trying to do it over a video screen that's the first thing the second thing is under the condition she's facing no other inmate in the country is facing the conditions of confinement so she's trying to prepare during a pandemic over a video screen without sleep without all the things that a regular inmate would get and I'd say that the last thing that's really unique well I guess two things one is the allegations in this case are decades old so it provides even another challenge but but the last thing that's unique your honor is that the bail package that she's proposed is also unprecedented and shows that she's not a risk of flight so so those things together make this a perfect case for releasing our under 3142 I temporary release so that she can prepare for trial we're just asking again for a fair shot where she can get a good night's sleep print some documents search the documents meet with her lawyers face to face we just want a fair shot she's presumed innocent of course may I ask you before the district judge have you raised the issue before the district judge of her being having a light shined in her eyes every 15 minutes making it difficult or impossible for her to sleep and and the and the issue of if you think it is an issue of her not being allowed a a proper face mask with an elastic behind so that it could cover her eyes so that she will not be awakened by the light have you raised that with the district judge we've certainly raised the the light in her eyes every night and we've asked for hearings and we've asked for an Bureau of Prisons as to why they're doing this none of that has been provided and the court has never held that the lower court has never held a hearing where it has summoned a Bureau of Prisons official to answer questions as to why this is being done why there's a camera on her 24-7 even when she meets with counsel I met with her Thursday night they had a camera on us in the visiting room the whole time it was impossible to have a lawyer client meeting with her because they were just to be clear because in other cases we've had this issue like there's no audio it's just a camera is that correct and the camera is fixed it's not a moving camera is that correct or am I it is three guards with a moving camera following her around even when she meets with counsel and with audio so we were whispering in the room so that nobody could hear us now the camera was on the outside of the glass but we had to move around with this camera it's unheard of if you objected did if you have you brought this to just Nathan's attention and objected to that absolutely your honor yes in multiple letters to the judge absolutely we'd like a hearing on it and we'd like her to be released so that these conditions don't hamper her ability to prepare for trial absolutely well I mean you yes you'd like her release but judge Nathan found that she's a flight risk right I mean that that's we haven't talked really about that at all you seem to be presuming that there are conditions that could assure her appearance but that's the big presumption I'm surprised we haven't talked about that at all so far yes your honor and the reason that judge Nathan erred in making that finding is she based it on the strength of the government's case and again that goes back to our argument that no evidence has been supported supports the proffer that the government has made the government has simply said look there's an indictment and it's a speaking indictment and there's a number of accusers so that corroborates each one corroborates the other that is not what corroboration means and of course the law is very clear that an indictment is not evidence and the jury will be instructed a that the indictment is not evidence and be that the number of allegations should not be also but just Nathan also pointed out the significant ties to foreign countries these significant financial resources and I know that there's a dispute about this but that she was in Hampshire for a period of time and I understand your argument that the government was well aware of where she where she was but there were significant issues with the significant risk of flight in judge do and that's what she found judge let me address each of those points one she was at her home in New Hampshire so I'm not sure how that evidence is risk of flight she could have gone overseas but she didn't she stayed here and she's a US citizen she's offered to renounce her foreign citizenship and she's offered to put up all of her money for bail purposes and to have the little left monitored by a federal judge a former federal judge I'm not sure what else she could do to demonstrate she's not a risk unlike what the government has done which is empty proffers that don't have anything to back them up and that's what this court's cases require your honor in LaFontaine and in Martyr they require something more than just saying the evidence is strong and so we would we would ask for a real bail if I want to explore that with you so they're saying there's three eyewitnesses who are going to testify and then they describe the testimony so what more do you think needs to happen you disclaimed the requirement of a hearing at which these people testify so what do you think is required well a number of things your honor one is the government has said that there is evidence to back up what those witnesses are saying that's not true at least nothing has been provided to the court to demonstrate that what those people are saying is true number two at a hearing where the government would at least call a witness or provide the statements those statements have not been provided to the court all the government has said is in the indictment these people alleged so at a bare minimum the government should have to provide to the court those actual statements basis for saying that there's authority that says that that's the requirement sure well there's no case that says he XY and Z is required but what the cases say in this circuit is that a conclusory proffer is not enough it has to be meaningful and backed up and in the LaFontaine case for example after a three-day hearing the government provided affidavits tape recordings transcripts in the martyr case which is sort of like this one where the government just said here's our proffer this court said it was a closed case but because the defense didn't object to the conclusory proffer the court wasn't going to reverse here we've objected all along and said no evidence has been provided to back up these statements I think what's critical judge Sullivan is that none of these witnesses and this is really important none of these witnesses these accusers mentioned Elaine Maxwell for 20 years they didn't mention Elaine Maxwell when they made complaints to the police and police reports 20 years ago it's only after Epstein died that an indictment was brought and and that these accusers came forward and that shows a real weakness not strength in the government's case so on a week decades old case something more should have to be provided then just the little reserve decision